We will call the next case, number 25-30134. Alan Parr v. Yachtinsure. Mr. DeMarce, when you are ready, sir. Good morning. May it please the court. Good morning, Your Honor. My name is Larry DeMarce and I represent Parkey, LLC and Alan T. Parr, Jr. The owners of a 77-foot motor yacht that was home ported in Key West, Florida. Mr. Parr lives, he's a doctor here in town, lives on the North Shore. He used the vessel as a family toy, I guess we could describe it. He was in Key West with his family, he went on a day voyage on July 3rd, 2023, I believe with his wife and his mother on board. They left port, a hose clamp unseated due to a piece of zinc breaking off in the system, overheated. The hose came off, the vessel started sinking. A salver came to the rescue, saved the vessel from fully sinking, they got it to port, everything was fine at that point. They sustained just under $1.3 million of damage as a result of this partial sinking. They filed a proof of loss with Yachtinsure, which was the insurance company that he paid for the insurance policy for, to insure the vessel. And they denied the claim. And they denied the claim because of two alleged policy violations that Mr. Parr had. Neither of which had anything to do with causing the actual incident. The first one was a crew warranty. The policy did include a provision that provided for a particular captain to be on the vessel, along with Mr. Parr as the mate. The captain was not, we fully understand, the captain was not on the vessel at the time. Again, it wasn't a cause for the incident. And the other violation that they alleged was a seaworthiness violation. The vessel, we never got that far in the case, but I believe the vessel will be found seaworthy while maintained. The insurance company filed a motion to dismiss. Judge Brown granted their motion to dismiss. I think that her analysis was very good for almost all of it. She found that the policy provided that New York law applied, which is something that we agree with. The policy specifically suggested general maritime law. And if there was no general maritime law precedent, state law would apply, which in this case was New York. So Judge Brown got that right. We're agreed that New York law applies? Yes. Okay. The issue comes into whether New York statutory prohibition on crew warranties applies. Okay. The state of New York has a statute that provides that you can't have a crew warranty in a policy. Right. When you look at, and it talks about their section 48, which gets to what a vessel is. And then it refers to a few more statutes, which each turn, it gets a little deeper and it gets a little more confusing. And that's where Judge Brown had absolutely no guidance as to determining what an ocean-going vessel is. Okay. And it seems like it would be very simple. An ocean-going vessel would be a vessel that can go into the ocean. It would make sense. I grew up sailing. I sailed Optimus dinghies. They were probably 11 feet long. I sailed in the ocean. I've been in the ocean in an ocean kayak. I've been in the ocean in a Hobie cat. I've been in the ocean in a bunch of vessels that I don't think that this honorable court would call an ocean-going vessel at any given time. So I think what we have to do is determine, either under New York law or under general maritime law, what constitutes an ocean-going vessel. And Mr. Parr's vessel falls into a gap, which it's just not very clear. But when you look at the definitions provided by the state of New York in their statutes and the cases, I think that the vessel that we're talking about here is clearly not an ocean-going vessel. And we'll go through it in detail, kind of an overview. Does anybody have any questions? I mean, I know this is not the most complicated case you all are having. Well, no. I mean, it's an interesting case because of the New York law angle. But I guess if you could just tell me why, in your view, under New York law, this is not an ocean-going vessel. I'll be glad to explain that. So when you look at the definition of how we get to what a vessel is under New York law, it starts with there. And I'm flipping to that, jumping ahead. It refers to any vessel as defined in Section 48 of the Navigation Law. And when you look at Section 48, it refers, just to make it complicated, to another statute. Section 48 combined with Section 2.6. 2.6 includes a very wide definition of what a vessel is. And it includes any floating craft. And then it goes on to differentiate between private and commercial vessels. So that's the first level that we look at. And clearly, no one's going to dispute that the MV after Part T is a vessel according to 2.6. When you come back to Section 48, which incorporated 2.6, it talks about vessels pursuant to Section 2.6, but then excludes vessels that required Coast Guard documentation for the types of vessels to which this particular prohibition would apply. The MV after Part T does not require Coast Guard documentation. It's a pleasure prep. Okay, so we've gotten to one factor. It doesn't require Coast Guard documentation. Yes. Okay. In your view, that counts against it being an ocean-going vessel. Correct. Because the only vessels that require, according to the Coast Guard documentation, are five net tons, and this vessel's probably five net tons, which engages in the fisheries on the navigable waters of the United States or in the exclusive economic zone or coast-wide trade. And so this vessel is not involved in coast-wide trade or fishing. It's the pars going out. Well, so you say it's related to that it's a pleasure vessel. Yes. Okay. And so I think when you look at just the definition of what a vessel is and the actual prohibition on the particular warranty, I think this vessel clearly falls within the scope of the prohibition. And as you know, any good statute has an exception of some sort to it just to try to confuse the situation, and our friends in New York did exactly that. So then there are two exceptions to this simple rule that we have of a vessel not involved in commercial activities. The first one is Section 2117, which involves, excludes, and this is where the ocean-going status starts getting a little twisted. 2117 deals with import-export and coast-wide trade. And again, we're not involved in coast-wide trade, and we're not involved in any import-export. The second exception is Exception 1113, Paragraph 21, and that specifically mentions certain insurance policies. And in that particular provision, it talks about protection and indemnity policies. And as this court in the Fifth Circuit is very well aware, a P&I policy is a specific type of policy usually issued to a vessel that we would easily agree is an ocean-going vessel. We don't have a P&I policy here. The policy that Yacht Insurance has is an actual yacht policy. And as you can see from the record, it's a pretty specific policy just to yachts. It's not a protection and indemnity policy, so it's not— You mean the policy at issue in this case. At issue in this case. It's a yacht policy and not a protection to P&I. Not a P&I policy. It's a yacht policy, okay. And it's certainly not a— I'm not sure. Where does that cut, though? That it's not this other kind of policy, but it's a yacht policy. Where does that cut with respect to what is an ocean-going vessel? Well, if the court would look at the actual statute, which is, again, not very easy to read, not very well organized, this particular exception only applies to certain insurance policies. So the exception to the prohibition on the captain and crew warranty wouldn't apply if this particular policy is listed in here. So here, if it was a P&I policy, we would be dead in the water right there. But that's not the case. So I think it gets back to the analysis, which is highly confusing, where we start off of it's a vessel. It's not Coast Guard certified. It was not inspected by the Coast Guard. It doesn't have a certificate of documentation. So the prohibition should on the captain and crew warranty should apply, unless an exception applies. And the two exceptions don't apply because it's not coast-wide trade, it's not a fishing vessel, and it's not a protection and indemnity policy. So although everything we've gone through is very convoluted as you go on back and forth, I think if you look at just New York law, which is one avenue that this court could take to determine what an ocean-going vessel is, I don't think that this vessel falls as an ocean-going vessel as delineated in the New York statutes as the New York legislature was probably envisioning. There are some New York cases that look at this situation. None of them particularly on point. But the New York courts, having no real guidance here, started looking at the territorial limits in the policy. And again, some of them might be clear. What does that mean, territorial limits in the policy? So this particular policy that we have, this yacht and shore policy for Mr. Parr, limited the use of the vessel to 250 miles from the United States eastern coast or the Gulf Coast. So the policy in our case restricts ocean travel. They're not allowed to go across the ocean. They're not even allowed to leave Key West and go to Cancun. They can just go to the Bahamas, which is less than 300 miles, which is probably where… Okay, 250, what is it again, 250 miles from where? From the eastern seaboard or the Gulf Coast. Okay. And so if you drew kind of a map around there, it's really just the Bahamas. It's the only place you can go. True, but if you drew a map, there's a lot of blue on the map. There is a lot of blue on the map, and we're not disputing that this vessel went into the ocean. Lots of vessels go into the ocean, but I don't think that's what the statute was envisioning. When you look at the New York cases, it talks about geographic restrictions. Some of them are clearly inland. It's a water taxi. The only one that really seemed to confuse the New York courts was a tug case that didn't go offshore, but the tug could have gone offshore, and they remanded it back to the district court, well, the magistrate, I think, to try to figure it out. So I don't think we get any guidance there. And then if you look at kind of the general maritime law cases, they also talk about ocean-going vessels in the kind of realm of international trade, coast-wide trade, or commerce. There's no cases anywhere that talks about a 70-foot motor yacht being an ocean-going vessel. I mean, this vessel is crewed by two people. You couldn't get very far, just if you were looking at Coast Guard manning requirements. What, again, is the dimensions of the vessel you just said it was 71 feet? It is 71 feet. 71 feet. Okay. All right. So I don't think that it's ocean-going, although it is capable of being in the ocean. I can't really dispute that. But as I mentioned, there are lots of boats that I've been on in the ocean. I've been on a sea kayak, too. That's not an ocean-going vessel. And you made it back in one piece. Well, yeah, barely. Okay. Well, thank you. So we end in confusion. Sometimes that's where we end with the New York law. All right. Well, thank you, counsel. You've saved some time for rebuttal. Thank you. Mr. Frank? Good morning.  Can you help us navigate out of confusion? Yes. May it please the Court. As my friend on the other side has provided to the Court, this case comes to the Court from an order of reasons entered by Judge Nanette Brown on a motion to dismiss a complaint. That was earlier this year, February 26th. As a threshold matter to get to the definition of an ocean-going vessel, we first have to establish whether New York Insurance Law 3420 subsection E applies. 3420 subsection E applies only in third-party liability context, and when the insurance policy is issued or delivered in New York or insures a vessel that is issued or delivered in New York. That is what the statute says.  The case law that they have cited, Casela, which is their main case, which they rely upon. In Casela, there was a third-party claim that was being made against the insured based on a boating collision that occurred in New York where the insured vessel was also confined to New York waters. So there, that case involved a third party going against New York. You can use your time however you like, but these issues about delivery in New York and the incident occurring in New York, were these raised below? They were not, no, Your Honor. So why should we consider them? Well, in order for 3420E to apply to this case, which then will give the avenue for defining an ocean-going vessel. Sure, but it sounds like, are you raising them to say that it doesn't apply? I'm raising, yes, Your Honor. 3420E does not apply. Okay, but my question was, was that argument raised before the district court? It was raised in our answer brief on appeal. Yeah, but the district court went on the ocean-going vessel, and you prevailed, right? That's correct, Your Honor. Okay, but you're raising an alternative ground for affirmance? So in the district court, when we followed our reply to the response in opposition to our motion to dismiss, we took the position that even in appellant's best debt, if the court was to define what an ocean-going vessel is, they don't prevail because they have to first satisfy the 3420E statute. 3420E does not apply. Therefore, there's no reason a definition for an ocean-going vessel needs to be enunciated by the court. Okay, so you're saying you did raise the argument in the district court? The argument was raised in the district court in our reply to their response in opposition. Okay, so maybe the other side will have something to say about that. Did the district court decide those issues? The district court went on to determine what an ocean-going vessel was. Yes, but the other threshold issues you're talking about. The threshold issue as to whether 3420E applies? She obviously assumed it did, right? Because that's why she was worried about whether it was an ocean-going vessel, right? Or not? She went through that analysis, yes, Your Honor, because in the complaint that was filed by the plaintiff, they laid out this 3420E statute, and they took the position that 3420E applied to the case, and therefore this crew warranty should not apply. And because they've conceded that the vessel wasn't properly manned, it's supposed to be manned by two approved captains and an approved mate, and that was not done on the day of loss. So under New York law, express warranties in marine insurance policies must be strictly and literally complied with. Noncompliance forbids recovery, irrespective of the causal nexus. So they go on to say that there's a zinc that got caught in the hose that is irrelevant to the analysis as to how the law is applied, and which was agreed to by the parties at the outset of the relationship was that New York law would apply. And they agreed that New York law does apply to the analysis and interpretation of the captain and crew warranty. And their insurance policy and how and what does the insurance policy say? The insurance policy says when there is a breach of a warranty, there is no coverage of void ab initio. So that's that issue. Now, to the point. So you represent the yacht insurance, right? Yes, Your Honor. Okay, so tell me why you want this judgment affirmed, right? Yes, Your Honor. Okay, tell me why it should be affirmed. The judgment should be affirmed because there is no avenue to get to defining an ocean-going vessel under the path that they have taken. The path is 3420E must apply in order for this court to say that this vessel was. Do you agree with the district court's order in this case? Yes, Your Honor. Okay, so tell me. They're saying it's obviously an error. The district court's order. Tell me why it's correct. It's correct because the ultimate conclusion results saying that there was a breach, that breach voids the policy, and there's no coverage. So Yacht Insurance properly denied coverage under New York law, and the district court, therefore, properly dismissed the claim with prejudice. Because there's no dispute that there was the vessel was not properly manned under the insurance policy that both parties agreed to. And when that happened under New York law, which is the law that both parties selected under the policy, the choice of law falls, the policy is void under New York law and under the policy. And that's what this court decided in Great Lakes v. Gray Group, where there's a hurricane clause. Okay, I'm still a little confused. Why aren't we talking about whether the vessel is ocean-going or not? Because, Your Honor, in order for this court to enunciate a definition for ocean-going vessel, we first have to establish that New York insurance law 3420E applies to this case. And it doesn't because the policy was not issued. It was not delivered in New York. It was delivered here in Louisiana. It covers a vessel that is moored in Key West, Florida. It is not moored and it's not used in New York. Okay, those two points you just made, did the district court agree with you on those points? Policy wasn't delivered in New York. Vessel wasn't moored in New York. I would have to go back and recheck the order, but I believe so. You don't know whether the district court agreed with you or not on those points? I don't want to misrepresent something if it's on the order, but I believe that it did in order to reach the conclusion that it came to.  All right, go ahead. Thank you, Your Honor. So, again, yes, this is a vessel that is 77 feet in length. It's a twin-engine, 1,740-horsepower vessel, and it is capable of going ocean-bound if that is the capability. But, again, putting that aside, the case law says that the policy speaks to whether the vessel is ocean-going, and this vessel could go from East Fork, Maine, to Brownsville, Texas, and all the way to Bahamas, 250 miles offshore from the East Coast, Bahamas, and the Gulf. So to say that this vessel is not ocean-going, I would respectfully say that it could be. Okay, so counsel opposite argued entirely about whether it's ocean-going. So I assume that has some relevance to whether we affirm or reverse the district court. Did the district court find that the vessel, with the meaning of New York law, was ocean-going? Yes, Your Honor, the district court did find that. Okay, so counsel opposite obviously disagrees with that. So why is the district court correct on that point? The district court is correct on that point because the vessel is able to go into the Atlantic Ocean, into the Gulf of Mexico. Okay, counsel opposite says so is a sea kayak. So I wouldn't say a sea kayak is an ocean-going vessel. I don't think it is. And under the New York law that has taken on this point has said that the policy dictates whether or not the vessel is ocean-going, and if the vessel can go coast-wise up and down the eastern seaboard. Where are we getting that standard from, the standard? Because your friend on the other side said it's difficult to figure out what the standard is under New York law for what is an ocean-going vessel. So where are we supposed to look? So Zag Low is an eastern district in New York case that goes on to say that a similar policy in that case where it could go to Eastport, Maine, down to North Carolina, that was considered an ocean-going vessel, and therefore 3420E did not apply. And that's what the policy dictated, was that since it can go up and down the eastern seaboard from North Carolina up to Eastport, Maine, that the vessel should be classified as an ocean-going vessel, and therefore the named operator warrants... So that's a case? Yes, Your Honor. A decision? Yes, Your Honor. And what did the decision look to to figure out what an ocean-going vessel is? The policy, Your Honor. The insurance policy. Does the policy define what an ocean-going vessel is? The navigational limits dictate where the vessel could or could not... I'm just trying to get at what's the standard. What does the policy say that? Does the policy define ocean-going vessel as territorial limits? Our policy or the policy in... Policy in this case? The policy in this case, it does. It says that this vessel, this 77-foot vessel, could go from Eastport, Maine, to Brownsville, Texas, and to the Bahamas, excluding Cuba, 250 miles offshore. The policy defines that as the territorial limits of the policy? Of the navigational limits, yes. The navigational limits of the policy? Yes, Your Honor. Okay. So the policy says that, and we need to have to connect that up with ocean-going under the New York law. Yes, Your Honor. All right. Just look at the territorial policy limits, and we have a case that says that. Yes, Your Honor. And I believe it's noteworthy that in the district court, the order did cite the Zagul case, but the opponents have not briefed or analyzed that case in their brief. What's the name of the case again? It's... I have the first, the second name. It's Zagul 526F2nd361. Okay. Eastern District of New York case from 2007. In that case, I would say it's very similar to this case. There was a named operator, a warranty, and also it went on to define whether there was an ocean-going vessel or not. And it goes on to say that strict compliance, the standard under New York law for strict compliance is warranties. Okay. Now, counsel opposite said, no, no, we should look to see whether Coast Guard documentation is required for the vessel. Do you agree with that or not? I don't agree with whether the vessel needs to be documented. The vessel can easily navigate offshore. It was able to call the Coast Guard in this case and have a sailor come out and assist it during its partial sinking. So I don't agree that the vessel needs to be documented by the Coast Guard for it to be considered and classified as an ocean-going vessel. Okay. If there's... Anything else? Any other questions? No further questions. Okay. Thank you, counsel. All right. Thank you. Mr. De Marce, rebuttal. May I proceed, Your Honor? Please. Thank you. All right. I'll just answer a few of the questions that you were just asking. One, the policy does not define ocean-going anywhere. This is a policy written by Yacht Insurer, which is a London-based insurer. Those guys have been in the marine insurance business much longer than the United States has been in existence. If they wanted to define ocean-going, I think they probably could have figured out how to do it by now. But the policy stated geographically where the vessel could travel to and from. Isn't that right? It did, Your Honor. It limited it to 250 miles from the East Coast and Gulf Coast, which I argue prohibits real ocean travel. Because you couldn't travel across an ocean. You can really only go from Jacksonville to Charleston or Jacksonville to Key West, which... So you disagree that 250 miles offshore wouldn't get you into the ocean? I started with that and said this boat has the ability to go into the ocean just like the ocean kayak and the Optimus dinghy and the Hobie Cats all could. No, unless there's not having the ability to go there, the policy authorizes it to go there. Yes. It's authorized by the policy to go 250 miles offshore. Correct. Isn't that right? That is correct, Your Honor. That's different from having the ability to do something. This is the authorization to do it. Correct. All right. And we were within, at the time of this incident, we were within the geographical zone. But the ocean-going status only gets to the exception to the rule under New York law. So when you look at the 48 and 2.3 or Section 2.3 or whatever it was, when you put those two together, New York law says that a vessel that prohibits this particular warranty floats on the water, which we have, and is Coast Guard inspected and documented. And we don't have either one of those. I heard an argument about, oh, well, the policy wasn't delivered in New York and the vessel wasn't moored in New York. Is this relevant to this case? I don't think that that's relevant to this case at all because the parties agreed to apply New York law. Those statutes include any policy delivered in New York, any vessel or home or whatever is insured in New York applies because New York's trying to protect their citizens from exactly this type of behavior. This insurance company opted for New York law. We didn't ask for New York law. If they asked me, I would say let's pick Louisiana law. Let's go with what I know. It's better for business. But in this case— Why not Florida law? Why not Florida law? I'm licensed there. I could do Florida as well. But I think that here they selected New York law. They just don't like the way New York law applies to this particular situation. And I think my guess is they're going to probably change the policy. And that's what they should have done before. When you were asking about the definition of what a vessel is, they could have easily defined what an ocean-going vessel was. They could have said specifically in the policy. The vessel listed on the declaration page is an ocean-going vessel pursuant to New York law, the specific law we decided applied. And so that's where I think that they are. If everything was easy, we wouldn't need courts. That is true. That is true. Your Honor, you also asked about the applicability of Section 3420 and whether it applies. The district court did find that it applies but only invalidated with the ocean-going status. That's what I thought. It was a final judgment. They did not appeal any portion of the judgment. We appealed the judgment, and we appealed it based on this ocean-going status. So I think that if we are lucky enough to be returned to the district court— I was just trying to figure out what is actually before us in terms of the issues. Well, I'm sure we'll be arguing the law of the case at some point. In the event that— Who knows? Who knows? All right. Anything else, counsel? Any other questions? Thank you, counsel, for the argument. The case is under submission. We are going to take a ten-minute break.